*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON BLACK, Personal Representative of the
ESTATE OF EVELYN ELLA KELLOGG,

       Plaintiff-Appellee,

v

CHRISTEN KELLY LANDRY, KELLY SEAN
KARCHER, and KAREN CHRISTOPHER,

       Defendants-Appellees,

and

NICHOLAS KELLOGG,

       Appellant,

and

SHARON BLACK, ANNETTE LOWER, and
WILMER LOWER,

       Appellees.

UNPUBLISHED
August 14, 2025
11:13 AM

No. 372516
Grand Traverse Circuit Court
LC No. 2023-036691-NI

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

In this wrongful-death action, appellant, Nicholas Kellogg, appeals as of right the order approving a wrongful-death settlement and distribution of proceeds. The order was entered following a motion to approve the settlement and distribution of proceeds ("plaintiff's motion") filed by plaintiff-appellee, Sharon Black, as Personal Representative of the Estate of Evelyn Ella Kellogg. Plaintiff's motion was filed pursuant to a settlement reached between plaintiff and defendants Christen Landry, Kelly Karcher, and Karen Christopher. Appellant, along with

-1-

appellees Sharon Black, Annette Lower, and Wilmer Lower, are interested persons with respect to the settlement.[1]  Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from Evelyn's death and a subsequent dispute over the distribution of settlement proceeds following a wrongful-death action on her behalf.  In December 2022, Evelyn was struck and killed in a motor vehicle accident involving defendants.  Evelyn was survived by her husband, appellant; her sisters, Black and Annette; and her father, Wilmer.  In February 2023, plaintiff was appointed as the personal representative of Evelyn's estate.  Plaintiff initiated this wrongful-death action against defendants in July 2023.  One year later, plaintiff and defendants reached a settlement agreement and plaintiff moved to approve the settlement and distribution of proceeds.  Plaintiff proposed that ⅔ of the net proceeds be distributed to Black, and ⅓ of the net proceeds be distributed to Annette.  Plaintiff argued that appellant should be excluded from the distribution because he and Evelyn were undergoing divorce proceedings prior to Evelyn's death.

According to appellant's deposition testimony, Evelyn and appellant separated in July 2022, after which Evelyn initiated divorce proceedings against him.  Despite the pending divorce, appellant hoped to reconcile with Evelyn.  He texted her daily, sought counseling with her, continued to pay the mortgage to their home, and returned home for a period of time to take care of Evelyn when she was sick with COVID-19.  Before Evelyn died, appellant considered their divorce proceedings to be at a standstill.

In August 2024, appellant filed a response to plaintiff's motion, objecting to her proposed distribution of the settlement proceeds.  Citing the above facts, he maintained that the divorce was not finalized and he had hoped to reconcile with Evelyn prior to her death.  Appellant argued that he was entitled to claim settlement proceeds and that the facts supporting the couple's potential reconciliation warranted, at minimum, an evidentiary hearing for the trial court to make a fair and equitable distribution of the award for damages.

The trial court held a hearing on plaintiff's motion in August 2024, and received argument from appellant and plaintiff regarding the appropriate distribution of proceeds.  It denied appellant's request for an evidentiary hearing and adopted plaintiff's proposed distribution, finding that there was no evidence Evelyn was mutually seeking reconciliation with appellant.  The trial court then entered an order approving the settlement agreement and distribution of proceeds.  Appellant subsequently moved for reconsideration, which the trial court also denied.  This appeal ensued.

## II. STANDARDS OF REVIEW

---

[1] This opinion will use the term "defendants" to refer collectively to defendants-appellees Landry, Karcher, and Christopher.  The term "appellees" refers collectively to appellees Black, Annette, and Wilmer.  Although Black is the plaintiff in this matter, as personal representative of Evelyn's estate, this opinion will interchangeably refer to her as "Black," and "plaintiff," depending on the appropriate context.

This Court reviews a trial court's decision regarding the distribution of wrongful-death settlement proceeds for clear error. *Reed v Breton*, 279 Mich App 239, 241; 756 NW2d 89 (2008), citing *McTaggart v Lindsey*, 202 Mich App 612, 615-616; 509 NW2d 881 (1993). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Reed*, 279 Mich App at 241-242 (quotation marks and citation omitted). "If the reviewing court determines that the trial court made a mistake, it will then substitute its own appraisal of the record and reduce damages or conditionally affirm the award." *In re Claim of Carr*, 189 Mich App 234, 238; 471 NW2d 637 (1991). "This Court also reviews de novo a trial court's application of a statute." *Tree City Props LLC v Perkey*, 327 Mich App 244, 247; 933 NW2d 704 (2019).

## III. ANALYSIS

Appellant argues that the trial court erred by excluding him from the wrongful-death settlement proceeds and granting plaintiff's motion without holding an evidentiary hearing. We disagree.

Under MCL 600.2922(1) and (2), the personal representative of a deceased's estate may bring an action for damages on behalf of a person who, had death not occurred, would have been able to do so themselves. "[T]he wrongful-death act is essentially a 'filter' through which the underlying claim may proceed." *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 88; 746 NW2d 847 (2008). MCL 600.2922(3)(a) provides a list of individuals who may be entitled to damages under the wrongful-death act, including "[t]he deceased's spouse," and "brothers and sisters." Appellees do not contest appellant's eligibility to receive damages under this subsection.

Rather, the issue in this case relates to the distribution of damages reached through a settlement between plaintiff and defendants. MCL 600.2922(5) and (6) discuss the process for approving wrongful-death settlements and distributing proceeds. The statute provides, in relevant part:

> (5) If, for the purpose of settling a claim for damages for wrongful death where an action for those damages is pending, a motion is filed in the court where the action is pending by the personal representative asking leave of the court to settle the claim, the court shall, with or without notice, conduct a hearing and approve or reject the proposed settlement.

> (6) In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including . . . damages for the loss of financial support and the loss of the society and companionship of the deceased. The proceeds of a settlement or judgment in an action for damages for wrongful death shall be distributed as follows:

> * * *

> (d) After a hearing by the court, the court shall order payment from the proceeds of the reasonable medical, hospital, funeral, and burial expenses of the decedent for which the estate is liable. The proceeds shall not be applied to the payment of any other charges against the estate of the decedent. The court shall

then enter an order distributing the proceeds to those persons designated in subsection (3) who suffered damages . . . in the amount as the court or jury considers fair and equitable considering the relative damages sustained by each of the persons and the estate of the deceased. If there is a special verdict by a jury in the wrongful death action, damages shall be distributed as provided in the special verdict. [MCL 600.2922(5) and (6)(d).]

Although the wrongful-death act "provides the procedure for the trial court to follow in distributing proceeds," it "provides little guidance in deciding how to arrive at a distribution that is 'fair and equitable.' " *Carr*, 189 Mich App at 237-238. A claim for "the loss of society and companionship addresses the compensation for the destruction of family relationships which results when one family member dies." *Id.* at 239. This Court has observed that "[t]here is, of course, no precise formula for determining damages for loss of a loved one's society and companionship." *Id.* at 238. In making this determination, this Court considers whether "there is evidence to support the distribution of the estate on the basis of the parties' relationships to the decedent." *Id.* "The only reasonable measure of the actual destruction caused is to assess the type of relationship the decedent had with the claimant in terms of objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship." *Id.* at 239.

We conclude that the trial court's award of proceeds to Black and Annette was adequately supported by the record. Appellant testified during his deposition that Evelyn, Black, Annette, and Wilmer were "a very tight family," and Evelyn communicated with appellees daily by phone call or text. Accordingly, appellant's own testimony was "evidence to support the distribution of the estate on the basis of the parties' relationships to the decedent." *Carr*, 189 Mich App at 238.

Crucially, appellant conceded in the trial court and on appeal that Black and Annette are entitled to settlement proceeds. He argues that "if this [C]ourt were to award damages, [appellant] believes the more appropriate result would be an equal distribution of settlement proceeds . . . based upon [appellant's] evidence of damages as well as the fact that Ms. Black and Ms. Lower both lost their sister." Based on these concessions, the appropriate inquiry is whether appellant was properly *excluded* from the distribution of settlement proceeds based on his relationship with Evelyn.

We are not left with a definite and firm conviction that the trial court made a mistake when it excluded appellant from the award of settlement proceeds. The trial court properly identified that the issue was to determine "what [was] fair and equitable" in distributing the proceeds. It then considered the "evidence to support the distribution of the estate on the basis of [appellant's] relationship[] to the decedent." *Carr*, 189 Mich App at 238. While the court recognized that the divorce between appellant and Evelyn was not finalized, it observed, "[T]here is no evidence that [Evelyn] was seeking reconciliation," and appellant's testimony merely reflected "hope on behalf of [appellant]" that the couple would reconcile. Based on the couple's pending divorce and the lack of evidence that Evelyn wished to reconcile with appellant before she died, the court determined that the proposed distribution was fair and equitable.

Contrary to appellant's arguments, this determination was supported by the evidence. While it is clear that appellant hoped for reconciliation, he also testified that Evelyn did not bring up the possibility of reuniting. And although appellant reached out to Evelyn daily about

-4-

reconciling, her responses were "very brief," and she often did not respond, or took time to get back to him. Appellant also points to his testimony that he and Evelyn each began individual counseling, however, he also stated that Evelyn had not agreed to see a joint counselor. When asked whether Evelyn requested that he take care of her while she was sick with COVID-19, appellant stated that he "demanded it."

Accordingly, the record supported the trial court's conclusion that there was no evidence of "concrete overt steps" taken by Evelyn towards reconciliation. Although defendant assumed that the divorce proceedings were at a standstill and the case was not going to progress, as the court noted, appellant offered no concrete evidence that the couple planned to terminate the divorce proceedings. To the extent that appellant disagrees with the trial court's interpretation of the facts, we must give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). See also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 318; 14 NW3d 472 (2023) (noting that the trial court is in a superior position to judge the weight and credibility of evidence).

For the foregoing reasons, we conclude that the trial court properly "assess[ed] the type of relationship [Evelyn] had with [appellant] in terms of objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship," when it approved the settlement and distribution of proceeds. *Carr*, 189 Mich App at 239. Under MCL 600.2922(6), the trial court also properly considered what was "fair and equitable, under all the circumstances" by noting that appellant already recovered proceeds outside of the wrongful-death action, namely, Evelyn's life-insurance proceeds in the amount of $100,000. Accordingly, the trial court did not clearly err when it granted plaintiff's motion.

We also conclude that the trial court did not err by declining to hold an evidentiary hearing. "Under the Michigan wrongful death act, the trial court is required to hold a hearing and approve the distribution of the proceeds of any settlement." *Reed*, 279 Mich App at 242 (quotation marks and citations omitted). See also MCL 600.2922(6)(d) (providing that a court shall distribute wrongful-death proceeds following a hearing). The trial court discharged this obligation by holding a hearing on plaintiff's motion, and the record was sufficiently furnished to support the court's determination because the evidence "support[ed] the distribution of the estate on the basis of the parties' relationships to the decedent." *Carr*, 189 Mich App at 238. The trial court did not clearly err when it declined to hold an evidentiary hearing with respect to the distribution of settlement proceeds.

Affirmed. Having prevailed on appeal, appellees Black, Annette, and Wilmer may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman